Defendant holds the office of assessor for the parish of St. Charles. Plaintiff obtained a judgment against him personally for the sum of $600, with interest and attorney's fees, and proceeded by garnishment, under a writ of fieri facias, to subject to his judgment anything that was due defendant in the hands of the treasurer of the parish.
The answers to the interrogatories, propounded in connection with the garnishment, are to the effect that there is due defendant for the month of December, 1924, out of the assessor's salary fund, as salary, the sum of $333.33, and for the month of January, 1925, a like sum, of which $166.66 is due for the expenses of his office for that month.
While, as stated, the answers to the interrogatories are to the effect that for the month, of December, 1924, there is due defendant, as salary, $333.33, yet, since the assessor's *Page 313 
salary for the parish of St. Charles is only $2,000 a year, payable on the completion and filing of the tax rolls for the current year, and on the filing of certain sworn statements, with leave to the police jury to advance him his salary monthly, in installments not exceeding one-twelfth of his yearly salary, of which leave it appears the police jury has availed itself, it would seem that only $166.66 of the $333.33 is due defendant as salary for that month. Sections 1 and 6 of Act 251 of 1924. As the law allows the assessor of the parish of St. Charles, out of the assessor's salary fund, $2,000 a year to defray the expenses of his office, which may be advanced in installments sufficient to defray the expenses of his office for the preceding month, and which it appears is advanced in installments, it would seem that the balance of said sum of $333.33 for December is due in reality, as it is for January, if due at all, not for salary, but for the expenses of the office. Sections 2 and 6 of Act 251 of 1924. Hence it would seem that, when the answers to the interrogatories are read in the light of the law, of the $666.66 seized, one-half is for salary, and the remaining half is for the expense of the office.
When the answers to the interrogatories were filed, the trial judge granted an order directing that the money seized be forthwith paid to the sheriff, to be applied on the writ of fieri facias that had issued. Defendant then filed a rule to set the order aside and to have the money delivered to the sheriff returned to the parish treasury on the ground that he was a public officer, and that his salary was not subject to seizure, and on the further ground that the part of the money seized, which is payable to him for the expenses of his office, is not subject to seizure for the satisfaction of his personal debts.
The district court on the trial of the rule to show cause rendered judgment setting *Page 314 
aside the seizure and ordering the sheriff to return to the treasury the money seized, and directing the treasurer to place the money, when received, in the assessor's salary fund. On appeal to the Court of Appeal this judgment was set aside, and judgment rendered directing that the money seized be paid to the sheriff, to be applied on the writ of fieri facias which plaintiff had caused to issue in the execution of his judgment.
The theory upon which the Court of Appeal based its judgment to the effect that that part of the money seized, which is payable to defray the expenses of the assessor's office, should be returned to the sheriff to be applied on the writ, is that, if such money belongs to any one else than defendant, then defendant has no right to champion the interest of such other person, and, at any rate, no evidence has been offered to show that any one else is interested in the fund.
I am unable to agree with the Court of Appeal in this respect. The law clearly provides that there shall be allowed to assessors for clerical and other expenses in the performance of the duties, required of them by law, certain designated amounts for each year which may be advanced to them in installments, sufficient to pay their expenses for the preceding month. Sections 2 and 6 of Act251 of 1924. No part of the amount, so payable, belongs to the assessor personally. He has no right to use any part of it except for the purpose for which the allowance is made. Hence it is clear that he has no right to use any part of it to pay his personal debts, and, such being the case, if for no other reason, no part of it is subject to garnishment to satisfy those debts. If the court means to hold that, in the absence of evidence to the effect that defendant did not pay the expenses of his office with his own personal funds, the presumption will be entertained that he did, and hence that he has *Page 315 
a right to the money here seized to reimburse himself, the answer is that no such presumption, assuming that it would alter the case, will be entertained. To entertain such presumption would endanger the public fisc and the proper conduct of the assessor's office. As relates to the right of defendant to protect the amount allotted for the expenses of his office from seizure to satisfy his personal debts, I entertain no doubt of his right so to do. He has not only the right to do so, but it is his duty to so protect it.
The next question, that is, the one as to whether that part of the money seized which is payable to defendant as salary is exempt from seizure for his debts, presents more difficulty than did the preceding one. The rule with reference to such an exemption usually prevailing in this country is stated in Corpus Juris to be as follows:
 "While there is some authority to the contrary, it is generally held that in the absence of specialstatutory sanction the compensation of public officers and employees is not subject to garnishment, whether such compensation is still unearned, or has been earned but is not presently payable, or is presently payable." 28 C.J. p. 174, § 219. (Italics mine.)
The basis upon which the foregoing rule is usually, though not always, made to rest is that of public policy. 28 C.J. pp. 174, 175, § 219. The basis of the public policy involved is said in a footnote to the foregoing citation, taken from Lewis v. Denver, 9 Colo. App. 328, 329, 48 P. 517, to be as follows:
 "The salary of a public officer is a provision made by law for his maintenance and support during his term to the end that, without anxiety concerning his means of subsistence, he may be able to devote himself entirely to the duties of his office, and the public thus have the full benefit of his knowledge and ability in the service he is selected to render. If he could be deprived of his means of support by the garnishment of his salary, presumptively his efficiency as an officer would be impaired, if not *Page 316 
destroyed, and the public interests would suffer serious detriment."
In passing upon the question of the right to seize by garnishment or otherwise the salary of a public officer, this court has never found it necessary to base its ruling on the general rule stated above, though in Moll v. Sbisa, 51 La. Ann. 290, 25 So. 141, it reinforced the basis of its ruling by reasoning not dissimilar to that used by the Supreme Court of Calorado and quoted above from Corpus Juris. The reason why the court has found no occasion to base its ruling on the general rule, above stated, is that, since the adoption of the Code of Practice in 1825, until 1918, there has been a provision in the Code prohibiting the seizure of the salary of an officer, and the rulings on that question have always been based on that provision, though in the Moll Case article 1992 of the Civil Code, which contains a similar provision, is also cited. Dunbar v. Dinkgrave, 10 La. Ann. 546; Chaudet v. De Jong, 16 La. Ann. 399; Wild v. Ferguson, 23 La. Ann. 752.
The article of the Code of Practice referred to is article 647, and reads as follows:
 "But if the debtor has neither movable, nor immovable property, the sheriff may seize the rights and credits which belong to him, and all sums of money which may be due to him, in whatsoever right, unless it be for alimony or salaries of office."
In 1872, by Act No. 39, the Legislature amended and re-enacted article 644 of the Code of Practice, so as to make it correspond with article 1992 of the Civil Code. The effect of the amendment was to incorporate in article 644, among other exemptions, a clause expressly exempting the salary of an officer from seizure.
In 1874, by Act No. 17 of that year, the act of 1872, amending and re-enacting article 644 of the Code of Practice, was amended and *Page 317 
re-enacted, so as to include expressly sewing machines, used in one's calling, among the exemptions from seizure, and so as to make certain acts, which might be done in contravention of the article of the Code of Practice, as amended and re-enacted, a misdemeanor. From the promulgation of the act of 1872 until early in 1876, the salary of an officer was expressly declared exempt from seizure by articles 644 and 647 of the Code of Practice, and, I may also say, by article 1992 of the Civil Code, which provides, among other things, that money due for the salary of an officer cannot be made liable to the payment of debts. In 1876, by Act No. 79, the Legislature amended article 644 of the Code of Practice by making certain changes therein, though it still retained the provision incorporated in it by the act of 1872, providing that the salary of an officer shall be exempt from seizure. The act, amending the article, has an important bearing on the decision of this case, especially in view of its repealing clause. Omitting only section 2 of the act amending the article, which makes it a misdemeanor to violate the provisions of the act, or to induce any one by artifice to sign away his rights thereunder, the act reads as follows:
 "Section 1. Be it enacted by the Senate and House of Representatives of the state of Louisiana in General Assembly convened, That article six hundred and forty-four of the Code of Practice be so amended as to read as follows: The sheriff or constable can not seize the linen and clothes belonging to the debtor or his wife, nor his bed, bedding or bedstead, nor those of his family, nor his arms and military accoutrements, nor the tools and instruments, and books, and sewing machines necessary for the exercise of his or her calling, trade or profession by which he or she makes a living, nor shall he in any case seize the rights of personal servitude, of use and habitation, of usufruct to the estate of a minor child, nor the income of dotal property, nor money due for the salary of anofficer, nor laborers' wages, nor the cooking stove and utensils of the said stove, nor the plates, dishes, knives and forks, *Page 318 
and spoons, nor the dining table and dining chairs, nor wash tubs, nor smoothing irons and ironing furnaces, nor family portraits belonging to the debtor, nor the musical instruments played on or practiced on by any member of the family. * * * (Italics mine.)
 * * * * * * * * *
"Section 3. Be it further enacted, etc., that all laws and parts of laws conflicting with this act or contrary to any of its provisions, and all laws onthe same subject matter, the amendment of article 644 of the Code of Practice (referring to the acts of 1872 and 1874), be and they are hereby repealed. (Italics mine.)
"Section 4. Be it further enacted, etc., that the repealing clause of this act shall not be construed or interpreted so as to affect the exemption of the homestead, the widow's one thousand dollars, nor the rural and agricultural exemptions now in force by existing laws, it being the true meaning and intent of this act that those exemptions should not be affected by this act.
 "Section 5. Be it further enacted, etc., that this act shall take effect from and after its passage."
Without attempting to particularize the scope of the repeal effected, yet it should be observed that the repeal of "all laws on the same subject-matter" by the foregoing act necessarily repealed article 647 of the Code of Practice and article 1992 of the Civil Code, in so far as they relate to the exemption of the salary of an officer from seizure, and it also repealed any other law there might have been on that subject-matter, whether or not it was a rule deduced by jurisprudence from general principles, recognizing the existence of such an exemption. The effect of repealing all laws on the same subject-matter, in so far as relates to the question here involved, was not to change the substance of the law, with reference to the exemption of the salary of an officer, for the act containing the repealing clause expressly recognizes that exemption, but to confine the declaration of the legislative will on that subject to the act itself. For the time being, at least, that act became the sole evidence of the declaration of the legislative will on the subject. *Page 319 
It was the intention of the Legislature by the act of 1876 to confine the exemptions from seizure to article 644 of the Code of Practice, as amended and re-enacted by the act of 1876, save as to the exemptions expressly enumerated as being saved from the repeal in section 4 thereof, quoted supra, by repealing all laws on the same subject-matter. The purpose that the Legislature had in view was to simplify the law, and to make the preceding article of the Code of Practice mean what it says. That article (article 643) reads as follows:
 "As soon as the sheriff has received this writ [referring to the writ of fieri facias] he must execute it without delay, by seizing the property of the debtor which he shall find in his parish, except suchthings as are mentioned in the following article."
(Italics mine.)
But there were exemptions then existing by virtue of some statutory enactment, which were not referred to in article 644 of the Code of Practice, which, of course, immediately follows article 643 thereof. Therefore article 643 of the Code of Practice did not mean what it purported to say. Moreover, there were exemptions mentioned in article 644 of the Code of Practice, which were mentioned or granted in article 644, which were also mentioned or granted by other articles of the Code of Practice and of the Civil Code. Therefore, in order to simplify the law, and to make article 643 mean what it purports to say, the Legislature, in amending and reenacting article 644 of the Code of Practice, by the act of 1876, repealed all laws on the same subject-matter, excepting those only which are enumerated in section 4 of the amendatory act. By virtue of the terms of the amendatory act, that act became article 644 of the Code of Practice. Article 643 then meant what it purported to say, and the law was simplified by making article 644, as amended and re-enacted by the act of 1876, the sole evidence of the legislative will as to *Page 320 
exemptions; all of the exemptions at that time, including the homestead exemption, being statutory. Article 644, as thus amended, and as thus made the sole evidence of the legislative will, as to what should be exempt from seizure, continued to make the salary of an officer, meaning, of course, a public officer, exempt from seizure.
In 1918, by Act No. 184, the Legislature amended and re-enacted section 1 of the act of 1876, the act which I have just mentioned, repealing all laws in conflict with the section as amended, and leaving untouched the remaining sections of the act. The only change whatever made in the section was to omit the clause exempting the salary of an officer from seizure. Why did the Legislature omit that clause, and repeal all laws in conflict with the act? It cannot be that this omission was made, as suggested in the opinion of the majority, because the author of the act, or the Legislature, feared that this court might hold that the word "officer" in the clause granting the exemption would be construed to mean a private as well as a public officer. If the author of the act, or the Legislature, had so feared, he or the Legislature, to avoid such a construction, would simply have inserted the word "public" before the word "officer" in the clause granting the exemption, and would not have sought to avoid the construction by rejecting a means so naturally suggestive to adopt as a means to accomplish that purpose the omission of the exemption of an officer's salary altogether. The only reason why the Legislature omitted from the act of 1918 (which may be said to be article 644 of the Code of Practice, or, at least, the essential part of that article) the clause exempting an officer's salary from seizure is that it did so for the purpose of making an officer's salary subject to seizure. It being the legislative will to make an officer's salary subject to seizure, no rule of public policy can be invoked to defeat it, *Page 321 
for, within constitutional bounds, the Legislature is the branch of government that determines the policy of the state.
If the office were one in which the salary is payable directly by the state out of its treasury, a different question from the one here presented might arise, for then it would be possible that the garnishment might be considered, in effect, a suit against the state, and it might be held that the act of 1918 is insufficient to authorize such a suit, and the garnishment defeated upon the theory that the state cannot be sued without its consent, or possibly a different question might arise, even if the office were one in which the salary is fixed by the Constitution. However, no such questions arise in this case (and I express no opinion concerning them), for, while the Constitution provides for the office of assessor, yet the salary is left to the Legislature to fix, and, while the statute fixing the salary makes it payable out of a fund formed by contributions made by the various political bodies (including the state), collecting taxes on the basis of the assessments made, yet the fund is deposited in the parish treasury, and the salary is paid out of it by the parish. Const. 1921, art. 14, § 9; sections 3 and 4 of Act 251 of 1924. The proceeding cannot be considered one against the state.
For these reasons I concur in the decree, so far as relates to the seizure of the expenses allotted for the office, but dissent as to the exemption of defendant's salary from seizure.